J-S02015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: I.M.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.H., FATHER | No. 1992 EDA 2014 |

Appeal from the Decree June 10, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000251-2014
FID: 51-FN-274859-2009

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY MUNDY, J.:                    **FILED FEBRUARY 10, 2015**

Appellant, A.H. (Father), appeals from the June 10, 2014 decree involuntarily terminating his parental rights to his daughter, I.M.H., born June 2010.[1]  After careful review, we affirm.

We summarize the relevant factual and procedural history of this case as follows.  The Philadelphia Department of Human Services, Children and Youth Division (DHS), became involved with this family in September 2012, upon receipt of a report alleging that I.M.H. sustained head injuries while in the care of a friend of Mother.  N.T., 6/10/14, at 7-10.  On September 25, 2012, I.M.H. was placed in the custody of DHS.  Trial Court Opinion,

_____

[1] By decree dated July 17, 2014, the trial court voluntarily terminated the parental rights of I.M.H.'s mother, C.M.S. (Mother).  Mother did not file a notice of appeal.

8/13/14, at 2.[2]  It is undisputed that, at the time of her placement, I.M.H. was residing in the care of Mother and not Father.

On October 9, 2012, I.M.H. was adjudicated dependent.  At the time of her adjudication, Father was residing in a one-bedroom apartment with his paramour, and he was attending an outpatient substance abuse treatment program at North East Treatment Center (NET).  *Id.*

The record reveals that Father has a long history of drug-related crimes.  N.T., 6/10/14, at DHS Exhibit 9.  In October 2012, shortly after I.M.H.'s placement, Father was again arrested for a drug-related crime, to which he pleaded guilty, and was sentenced to a minimum sentence of eleven months' incarceration and three years' probation.  *Id.*

DHS established the following family service plan (FSP) goals for Father: to participate in programs through the Achieving Reunification Center (ARC), including, but not limited to, employment assistance; to participate in parenting classes; to obtain a General Educational Development Test; to obtain appropriate housing; to participate in outpatient drug and alcohol treatment at NET; and to participate in supervised visits with I.M.H.  N.T., 6/10/14, at 11, 16, 21.  In addition, Father was directed to undergo a drug screen at the Clinical Evaluation Unit (CEU) and to participate in all recommendations.  *Id.* at 12.

---

[2] The trial court's opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) is unpaginated.  Therefore, we have assigned each page a corresponding page number for ease of reference.

On May 27, 2014, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing was held on June 10, 2014, during which DHS presented the testimony of its caseworker, Tracy Duckery, and the Catholic Social Services worker, Rolanda Johnson. Father testified on his own behalf.

On June 10, 2014, the trial court involuntarily terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). On July 7, 2014, Father filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). On August 13, 2014, the trial court filed its Rule 1925(a) opinion.

On appeal, Father raises one issue for our review

> 1. Did the trial court err in determining it was in the best interest of the child to terminate [F]ather's parental rights?

Father's Brief at 5.

We review a termination order according to the following standard of review.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court

made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d [567,] 572 [(Pa. 2011) (plurality)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id***.; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 ([Pa.] 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id***.

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [***supra***]. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012) (parallel citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the

- 4 -

focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted), *citing* 23 Pa.C.S.A. § 2511. The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude the orphans' court properly terminated Father's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination**

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

…

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary

- 5 -

for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

**(b)** **Other** **considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b); **see also In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that this Court need only agree with any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm the termination of parental rights), *appeal denied*, 863 A.2d 1141 (Pa. 2004).[3]

---

[3] Sections 2511(a)(5) and (8) do not provide a basis for the termination of Father's parental rights because I.M.H. was not removed from Father's care. **See In re C.S.**, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (stating that termination under subsections (5) and (8) is not appropriate where the child was not in the appellant's care, and therefore could not have been removed from the appellant's care); **In re Z.P.**, 994 A.2d 1108, 1118 (Pa. Super. 2010) (holding that "a court may terminate parental rights under subsection (a)(2), even where the parent has never had physical custody of the child[]").

- 6 -

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination [of parental rights under Section 2511(a)(2),] due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

With respect to Section 2511(b), this Court has explained the requisite analysis as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.

- 7 -

> *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super.
> 2008). Accordingly, the extent of the bond-effect
> analysis necessarily depends on the circumstances of
> the particular case. *Id.* at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, Father argues that the record evidence does not support the decree terminating his parental rights because he has met his FSP goals with respect to housing, drug and alcohol treatment, parenting classes, and, "up until the last several months, was visiting his daughter regularly." Father's Brief at 12. Upon review, we discern no abuse of discretion.

Although Tracy Duckery, the DHS caseworker, testified that Father completed his FSP goal regarding parenting classes, the record reveals that Father last saw I.M.H. in December 2013, which was approximately five months before DHS filed the petition for involuntary termination. N.T., 6/10/14, at 21. Rolanda Johnson, the social worker at Catholic Social Services who supervised Father's visits, testified that Father had participated in visits with I.M.H. twice per week throughout the history of this case. *Id.* at 45. Johnson testified that, prior to December 2013, Father's attendance "was pretty good then. He was coming[.]" *Id.* Further, Johnson testified that the visits between Father and I.M.H. went well. *Id.* at 46. When questioned on cross-examination by the Child Advocate as to why he cannot visit I.M.H. anymore, Father responded, "There aint [sic] no reason." *Id.* at 60. However, Father testified he has another child who is three years old

whom he continues to see.  *Id.* at 61.  Father's testimony continued as follows.

> [CHILD ADVOCATE]: Why would you see that child and not see [I.M.H.]?
>
> A. I don't have to go through too much BS.  I could just go see him.

*Id.*

With respect to the FSP drug and alcohol treatment goals, Duckery testified that the CEU issued a report of noncompliance in January 2013 because Father had a positive drug screen.  *Id.* at 34.  The CEU issued a second report of noncompliance in April 2013, for failure to attend.  *Id.* at 32.  Duckery testified that Father's probation requires him to obtain drug treatment through NET, but that Father has failed to sign a consent form permitting NET to provide information, so she does not know if he is currently compliant.  *Id.* at 37-38.  Father testified he participates in drug and alcohol treatment at NET once per week.  *Id.* at 53.

With respect to the housing goal, Father testified he has lived in two separate residences in the last two or three years.  *Id.* at 64.  Father testified he currently resides in a two-bedroom apartment.  *Id.*  Duckery testified she requested to look at his new apartment, but Father told her "that at this point it wasn't necessary."  *Id.* at 20.  Upon inquiry by the Child Advocate, Father implied he did not let Duckery visit because, "I don't plan on being there for too long."  *Id.* at 64.

Duckery also testified that Father failed to comply with his FSP goal involving job training and employment through ARC because Father "said he wished to look [for a job] on his own." *Id.* at 16-17. Father testified he is unemployed, but he is looking for work. *Id.* at 52-53.

The foregoing testimonial evidence demonstrates that Father's repeated and continued neglect or refusal to satisfy his FSP goals has caused I.M.H. to be without essential parental care, control or subsistence necessary for her physical or mental well-being. Further, the causes of Father's neglect or refusal to satisfy his FSP goals cannot or will not be remedied. Indeed, at the time of the termination hearing, I.M.H. was nearly four years old and had been in placement for more than 20 months. Father was on probation at the time of the termination hearing for a drug-related crime committed after I.M.H.'s placement. Father had not participated in supervised visits with I.M.H. for six months, had unstable housing, was noncompliant with drug treatment at the CEU, did not accept employment assistance through ARC, and he remained unemployed. We conclude that this evidence adequately supports termination pursuant to Section 2511(a)(2).

With respect to Section 2511(b), Father argues he shares a bond with I.M.H. In the alternative, Father asserts there was insufficient evidence with respect to whether a bond exists between him and I.M.H. We disagree.

Our Supreme Court confirmed that, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Court further stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 268 (citation omitted). Moreover, the Court directed that, in weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail … the result, all too often, is catastrophically maladjusted children." *Id.*

In this case, the testimonial evidence demonstrates that, although a bond on some level had started to develop between Father and I.M.H. during supervised visits, Father and I.M.H. do not share a parent-child bond. N.T., 6/10/14, at 26-27, 42, 48. Rather, a parent-child bond exists between the foster mother and I.M.H., with whom she has resided since placement. *Id.* at 26, 47-48. In fact, Johnson testified that it would harm I.M.H. if she was removed from her foster mother. *Id.* at 47. In contrast, Johnson and Duckey both testified that there would be no harm to I.M.H. if Father's parental rights were terminated. *Id.* at 27, 48. Further, to the extent Father asserts that DHS did not satisfy its burden of proof because there was

no bonding evaluation performed, it is well-settled that "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." **In re Z.P.**, 994 A.2d 1108, 1115-1116 (Pa. Super. 2010) (internal citations omitted). As such, Father's issue fails with respect to Section 2511(b).

Based on the foregoing, we conclude the trial court did not abuse its discretion when it involuntarily terminated Father's parental rights pursuant to Section 2511(a)(2) and (b). **See S.P.**, **supra**. Accordingly, we affirm the trial court's June 10, 2014 decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2015